**Paul F. BRUNING, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17445.**

United States Court of Appeals Ninth Circuit.

May 3, 1963.

Ernest R. Mortenson, Pasadena, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, and Kenneth E. Levin, Attys., Dept. of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., and Robert H. Wyshak, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges.[1]

CHAMBERS, Circuit Judge.

Paul F. Bruning has been through bankruptcy. At adjudication one of his debts was to the United States for withholding and social security taxes for the fourth quarter of the year 1951. The government participated in the bank-

1. John R. Ross, United States district judge for the District of Nevada, was the third member of the division which heard the arguments. His death occurred on April 22, 1963. Therefore, he has not participated in the decision herein.

ruptcy estate, but its claim was only partially satisfied on distribution.

Bruning is entitled to an income tax refund for later years unless the government can offset the refund by charging him post bankruptcy interest (that is, after adjudication). The case gets into court because Bruning has filed claims with the director of internal revenue for a refund which were denied.[2] So he sought in the district court to obtain the money from the United States. This he was denied by the district court. Bruning v. United States, D.C., 192 F.Supp. 826. Although it probably sets up a conflict with United States v. Mighell, 10 Cir., 273 F.2d 682, 77 A.L.R.2d 1119, we choose to follow our trial court's decision.

Section 17, sub. a of the Bankruptcy Act (11 U.S.C. § 35, sub. a) provides as follows:

"Debts not affected by a discharge. (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States, or any State, county, district, or municipality; (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation; (3) have not been duly scheduled in time for proof and allowance, with the name of the cred-

itor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; or (5) are for wages which have been earned within three months before the date of commencement of the proceedings in bankruptcy due to workmen, servants, clerks, or traveling or city salesmen, on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; or (6) are due for moneys of an employee received or retained by his employer to secure the faithful performance by such employee of the terms of a contract of employment."

█ Obviously, under the above section insofar as the principal amount of tax debt was not satisfied out of the bankruptcy estate, the taxpayer would remain liable after his discharge.

█ It is well settled that as between the tax collector and the bankrupt estate that interest is suspended[3] as of the time of adjudication, City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710; United States v. Bass, 9 Cir., 271 F.2d 719; and In re Kerber Packing Co., 7 Cir., 276 F.2d 245. But if the estate is adequate and more to pay all claims which had accrued (including interest) as of the date of the bankruptcy then as between the debtor and the creditors, the latter get from the estate post bankruptcy interest. So even in the estate post bankruptcy interest is not gone for all purposes. American Iron & Steel Mfg. Co. v. Seaboard Air Line, 233 U.S.

2. As of the date of adjudication of bankruptcy on July 6, 1953, the principal balance on the unpaid taxes was about $3,-000.00. This was reduced by about $700.-00 by a distribution in the estate. Appellant Bruning does not question the director's right to deduct the principal balance from his refund. What is at issue in this case is the right of the director to deduct

about $800.00 in post bankruptcy interest.

3. One exception of course is negotiated security transactions. To the extent the security is adequate, interest is allowed against the res of the security during administration. Palo Alto Mutual Savings and Loan Ass'n v. Williams, 9 Cir., 1957, 245 F.2d 777.

261, 34 S.Ct. 502, 58 L.Ed. 949; Brown v. Leo, 2 Cir., 34 F.2d 127.[4]

Some of the cases denying relief for the extra interest out of the estate do speak of compassion for the debtor or of what will restore the debtor's economic health. For example, see National Foundry Company of New York v. Director of Internal Revenue, 2 Cir., 229 F.2d 149. But if paying interest on one's taxes after discharge is inimical to an ex-bankrupt's health, so is the payment of any balance of principal.

Section 17, sub. a is not a compassionate section for debtors. Congress, speaking for society, has decided that the problems of others: the government, the abandoned-dependent wife, the defrauded widow, override the value of giving the debtor a wholly new start in life.

There is language in City of New York v. Saper, trustee, supra, which is favorable to appellant here, but we think the holding, based upon the internal arrangements of the bankruptcy estate, does not require us to reverse. Further, we believe our ruling consistent with our bankruptcy estate decision of United States v. Bass, supra.

This opinion need not be further continued to restate in a different way the published opinion of Bruning's case in the trial court cited hereinabove.

Legislation is not our business. It may well be that with taxes reaching a position of dominance in the whole bankruptcy field, when the government gives away so much, it ought to give away after bankruptcy the interest on its taxes. Maybe Congress should say so clearly. But if we did so would we not give away the interest of him who was defrauded, the victim of the willful and brutal injury, those who lost by embezzlement? Perhaps we could waive the interest of the holders of judgment for breaches of promises to marry without too many qualms. But how could we choose among the beneficiaries of Section 17, sub. a? It must be admitted that taxes and more

taxes overshadow by general weight and burden the other protected debts of § 17, sub. a and that in most cases to talk of the other nondischargeable debts is often theory. But the section was written on a day other than today.

Affirmed.